**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

MALCOLM M.,

                Plaintiff,

    v.

COMM'R OF SOC. SEC.,

                Defendant.

No. 1:17-CV-0986
(CFH)

---

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| Malcolm M.<br>Plaintiff pro se | |
| Social Security Administration<br>Office of Regional General Counsel,<br>Region II<br>26 Federal Plaza, Rm. 3904<br>New York, New York 10278<br>Attorney for Defendant | JUNE L. BYUN, ESQ.<br>Special Assistant U.S. Attorney |

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION AND ORDER

Plaintiff pro se Malcolm M. brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income ("SSI") payments. Dkt. No. 1 ("Compl.").[1] Plaintiff did not file a brief. The Commissioner moves for judgment on the pleadings. Dkt. No. 16. For the following

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), FED. R. CIV. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18. Dkt. No. 4.

reasons, the determination of the Commissioner is affirmed.

## I. Relevant Background

### A. Factual Background

At the time of the hearing, plaintiff was a forty-five-year-old male who resided with his daughter. T. 40.[2] Plaintiff completed eleventh grade. Id. Plaintiff previously worked as a team leader at McDonald's for approximately a year-and-a-half. Id. at 46. He also performed computer work for estate sales, and worked in the child care industry. Id. at 46-47, 56-59. At the time of the hearing, plaintiff worked part-time at Restaurant Depot. Id. at 56-59.

### B. Procedural History

On June 30, 2014, plaintiff protectively filed applications for disability insurance benefits and SSI. T. 165-79. In both applications, plaintiff alleged disability beginning on February 1, 2010. See id. Plaintiff's applications for disability benefits were denied initially on September 10, 2014. Id. at 100-07. Plaintiff requested a hearing, and a hearing was held on February 23, 2016 before Administrative Law Judge ("ALJ") David Neumann. Id. at 37-80, 108-09. ALJ Neumann determined that plaintiff "ha[d] not been under a disability, as defined by the Social Security Act from February 1, 2010, through the date of this decision." Id. at 30. The Appeals Council denied plaintiff's request for a

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Dkt. No. 8. Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

review, making the ALJ's findings the final determination of the Commissioner. Id. at 1-3. Plaintiff commenced this action on September 5, 2017. See Compl.

On May 1, 2018, the Commissioner filed the Administrative Record / Transcript, and the Court set June 15, 2018 as the deadline for plaintiff's brief. Dkt. No. 13. On September 10, 2018, the Court issued a text order informing plaintiff that he had missed the brief deadline, and, in deference to his pro se status, extended plaintiff's time to file until October 10, 2018. Dkt. No. 15. The Court also instructed that, "[i]f plaintiff [did] not file a brief by October 10, 2018, defendant Commissioner shall file her brief within sixty (60) days from October 10, 2018." Id. Plaintiff failed to file a brief. On December 6, 2018, the Commissioner filed her brief. Dkt. No. 16. As of the date of this Memorandum-Decision and Order, plaintiff has not filed a brief.

**C. ALJ Decision**

Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff had not engaged in substantial gainful activity since February 1, 2010, the alleged onset date. T. 23. The ALJ found at step two that plaintiff had the severe impairments of lumbar degenerative disc disease, status post bilateral hip replacements, asthma, depressive disorder, and anxiety disorder. Id. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 24. Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

3

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [plaintiff could] perform low stress (non production oriented) work with occasional contact with supervisors, co-workers, and the public; can lift, carry, push, and pull five pounds frequently and ten pounds occasionally; can stand and walk for one hour total in an eight-hour workday; can sit with normal breaks for seven hours total in an eight-hour workday; should avoid concentrated pollutants and temperature extremes; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; and can use a cane for ambulation but the contralateral upper extremity can be used to lift and carry up to the exertional limits specified.

Id. at 25. At step four, the ALJ determined that plaintiff was unable to perform any past relevant work. Id. at 29. At step five, the ALJ found that, considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. Id. Thus, the ALJ determined that plaintiff "ha[d] not been under a disability, as defined by the Social Security Act from February 1, 2010, through the date of this decision." Id. at 30.

## II. Legal Standard[3]

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct

---

[3] Any unpublished decisions cited within this Memorandum-Decision and Order have been provided to plaintiff pro se.

4

legal standards were not applied, or it was not supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder *would have to conclude otherwise*." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986). However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

### B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . .

benefit . . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based on his or her age, education, and work experience. Id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairments is "based [upon] objective medical facts, diagnoses or medical opinions inferable from the facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner]

6

> will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progress to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

### III. The Commissioner's Argument

The Commissioner argues that the ALJ's decision is supported by substantial evidence. Specifically, the Commissioner contends that (1) the ALJ's RFC assessment is supported by substantial evidence; and (2) substantial evidence supports the ALJ's finding that plaintiff was capable of performing a significant number of jobs in the national economy. See Dkt. No. 16 at 15-22.

## IV. Analysis

In a civil case, a court may dismiss an action where, as here, "the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure ("Fed. R. Civ. P.")] or a court order . . . ." FED. R. CIV. P. 41(b). In other districts in the Second Circuit, courts have dismissed Social Security appeals *sua sponte* due to a pro se plaintiff's failure to prosecute. See Gonzalez v. Comm'r of Soc. Sec., No. 09-CV-10179, 2011 WL 2207574, at *2 (S.D.N.Y. June 2, 2011); see also Winegard v. Barnhart, No. 02-CV-6231, 2006 WL 1455479, at *9-10 (W.D.N.Y. Apr. 5, 2006). Nevertheless, the Court declines to do so in this case.

In the Northern District of New York, General Order No. 18 notifies parties of the consequences of failing to file a brief in connection with a social security action: "A party's brief may be its only opportunity to set forth arguments that entitle the party to a judgment in its favor. The failure to file a brief by either party may result in the consideration of the record without the benefit of the party's arguments." N.D.N.Y. General Order No. 18 at 5. Thus, "[i]n a case such as this, where Plaintiff is proceeding pro se, General Order No. 18's promise of a consideration of the merits complies with the special solicitude that the Second Circuit mandates for pro se litigants." Hubbard v. Comm'r of Soc. Sec., No. 6:14-CV-1401 (GTS/WBC), 2016 WL 551783, at *4 (N.D.N.Y. Jan. 14, 2016). As such, despite plaintiff's failure to file a brief, the Court may "examine[ ] the record to determine whether the ALJ applied the correct legal standard and reached a decision based on substantial evidence." Id. (citing Gregorka v. Comm'r of Soc. Sec., No. 6:13-CV-1408, 2015 WL 3915959, at *4 (N.D.N.Y. June 25, 2015).

8

## A. RFC Determination

RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms. See Martone, 70 F. Supp. 2d at 150; 20 C.F.R. §§ 404.1545, 416.945. "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." Martone, 70 F. Supp. 2d at 150. The ALJ then uses the RFC to determine whether the claimant can perform his or her past relevant work. See New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960. If it is determined that a claimant cannot perform past relevant work, "the burden shifts to the Commissioner to determine whether there is other work which the claimant could perform." Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). "An ALJ

should consider 'all medical opinions received regarding the claimant.'" Reider v. Colvin, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

The ALJ found that plaintiff could

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [plaintiff could] perform low stress (non production oriented) work with occasional contact with supervisors, co-workers, and the public; can lift, carry, push, and pull five pounds frequently and ten pounds occasionally; can stand and walk for one hour total in an eight-hour workday; can sit with normal breaks for seven hours total in an eight-hour workday; should avoid concentrated pollutants and temperature extremes; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; and can use a cane for ambulation but the contralateral upper extremity can be used to lift and carry up to the exertional limits specified.

T. 25. The regulations define sedentary work as work that

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

### 1. Physical Impairments

As to plaintiff's physical impairments, the Court concludes that the ALJ's RFC determination is supported by substantial evidence. In making his determination that plaintiff could perform sedentary work with certain limitations, the ALJ relied on the consultative examination of Dr. Joseph Prezio, whom he assigned "significant weight . . . because he examined [plaintiff] personally." T. 25-26, 29. At the August 2014 examination, Dr. Prezio noted that although plaintiff "appear[ed] worried," he was in no acute distress. Id. at 399. Plaintiff's gait showed a minimal limp to the right, and he could not walk or stand on his heels and toes due to discomfort in his right hip. Id. Plaintiff's squat was limited, but with a cane he could "get lower." Id. Dr. Prezio noted that plaintiff did not need help changing for his examination, and that he needed "minimal assistance" getting off the examination table. Id. Plaintiff was able to rise from the chair by pushing himself up with his cane. Id.

Dr. Prezio noted that plaintiff's cervical spine and lumbar spine had full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. T. 400. Plaintiff had full range of motion in his left hip, bilateral knees, and bilateral ankles. The right hip had full range of motion that "approach[ed] normal, but not quite and there [was] no pain or tenderness noted over the right hip." Id. Plaintiff's hand and finger dexterity were intact, and his grip strength was 5/5 bilaterally. Id. at 401. Dr. Prezio also noted that although plaintiff stated that he could not stand alone or bend down much, he cooked, cleaned, did laundry, shopped, showered three times a week, and dressed three times a week. Id. at 399.

Based on his examination, Dr. Prezio diagnosed plaintiff with (1) residual right hip pain, post total hip replacement; (2) depression, by history; (3) asthma; and (4) hypertension. T. 401. He opined that plaintiff's prognosis was good, and affirmed that "[b]ased on the current physical examination, [plaintiff] ha[d] mild to moderate limitations with respect to prolonged standing, walking, squatting, kneeling, bending, and doing any heavy lifting as a result of the post operative discomfort still in the residual phase, post right hip replacement." Id. He also opined that plaintiff should avoid smoke, dust, and other respiratory irritants. Id. Dr. Prezio's assessment that plaintiff suffered mild to moderate limitations is consistent with the ALJ's determination that plaintiff could perform limited sedentary work. See T. 25, 401; see also Calero v. Colvin, No.16 Civ. 6582 (PAE), 2017 WL 4311034, at *7 (S.D.N.Y. Sept. 26, 2017) (citing cases for the proposition that an ALJ's finding that the plaintiff could perform sedentary or light work is consistent with the plaintiff's mild to moderate limitations in prolonged standing or sitting).

The Court finds that the ALJ did not abuse his discretion in relying on Dr. Prezio's opinion as the opinion is supported by substantial evidence in the record. See Byrne v. Berryhill, 284 F. Supp. 3d 250, 260 (E.D.N.Y. 2018) ("An ALJ is permitted to accord greater weight to a consultative examiner's opinion if the conclusions are more consistent with the medical evidence.") (citing Rivera v. Colvin, No. 13-CV-7150, 2015 WL 1027163, at *16 (S.D.N.Y. Mar. 9, 2015)); Suttles v. Colvin, 654 F. App'x 44, 46 (2d Cir. 2016) (summary order) (concluding no error by ALJ to give great weight to consultative examiner's opinion because it was consistent with record evidence). Dr.

Prezio's opinion is consistent with other evidence in the record, including the March 20, 2016 opinion of Dr. Margaret Denio, who determined that plaintiff could return to work on March 23, 2016 with "no restrictions."  Id. at 506.

The ALJ also acknowledged the "limited substantive support" in the record of plaintiff's "disabling symptompology."  T. 28.  Although "it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves," Battease v. Comm'r of Soc. Sec., No. 3:15-CV-867 (ATB), 2016 WL 3824146, at *7 (N.D.N.Y. July 13, 2016) (internal quotations omitted), the Court concludes that the ALJ did not err in determining that plaintiff's daily activities failed to support his allegations of pain.  T. 28.  Plaintiff testified that he cooks, cleans, does laundry, shops, and "do[es] everything [he] can" in terms of household chores.  Id. at 59-60.  Plaintiff's testimony is also consistent with his own statements during his consultative examinations.  See id. at 395, 399.  He further stated that he, for the most part, showers, uses the toilet, and dresses independently, with the exception of his socks, which his daughter helps him with.  Id. at 61.  Plaintiff further testified that he maintained part-time employment at multiple jobs including McDonald's, in estate sales, performing childcare, and at Restaurant Depot.  Id. at 45-59.  Plaintiff testified that, at Restaurant Depot, he lifted gallons of milk weighing seven of eight pounds, stood about two hours a day with breaks, two hours walking, and a half hour sitting.  Id. at 58.  He also testified that he walked from work to the bus station, and then from the bus station home.  Id. at 59.  Such testimony, in addition to the medical evidence described above,

is consistent with the ALJ's finding that plaintiff could "lift carry, push, and pull five pounds frequently and ten pounds occasionally; can stand and walk for one hour in an eight-hour workday; can sit with normal breaks for seven hours total in an eight-hour work day; . . . [and could] occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl." Id. at 25. Thus, the ALJ's reliance, in part, on plaintiff's activities of daily living was not in error. See Martone, 70 F. Supp. 2d at 153 ("In summary, the objective medical evidence, the conservative treatment which plaintiff receives, as well as plaintiff's daily activities all belie plaintiff's claims of disabling pain and functional limitations. Therefore, substantial evidence supports the ALJ's decision to not fully credit plaintiff's subjective allegations.").

Thus, the Court concludes that the ALJ properly weighed the medical evidence in the record in determining plaintiff's RFC as to his physical impairments, and that the RFC determination is based on substantial evidence. As such, remand on this issue is not required.

**2. Mental Impairments**

As to plaintiff's mental impairments, the Court concludes that the ALJ's RFC determination is supported by substantial evidence. The ALJ's finding that plaintiff could perform "low stress (non production oriented) work with occasional contact with supervisors, co-workers, and the public" is consistent with the medical evidence in the record. T. 25. The ALJ afforded "significant weight" to the consultative psychiatric examination of Dr. Nicole Bromley, Psy.D as "her opinion [was] supported by her own

examination of" plaintiff.  Id. at 29.  At the August 2014 evaluation, plaintiff reported difficulty falling asleep, loss of appetite, and occasional depressive symptoms.  Id. at 393.  Plaintiff denied suicidal or homicidal ideation, and although he had a history of cutting himself, he stated that it had been "several years" since he last cut.  Id.  Dr. Bromley noted that plaintiff was cooperative and had an "[a]dequate manner of relating."  Id. at 394.  Plaintiff appeared his stated age, and was causally dressed and well-groomed.  Id.  He had normal posture and motor behavior, and appropriate eye contact.  Id.  Dr. Bromley noted that plaintiff's speech was "intelligibility fluent."  Id.  He had a clear quality of voice, and adequate expressive and receptive language.  Id.  Plaintiff's thought process was coherent and goal-directed, and his "affect was of full range and appropriate in speech and thought content."  Id.  Plaintiff's mood was "euthymic," his sensorium was clear, and he was "oriented x3."  Id.  Plaintiff's attention and concentration were intact, and he was able to do counting, simple calculations, and serial 3s.  Id. at 395.  Dr. Bromley indicated that plaintiff's recent and remote memory were intact.  Id.  He recalled three out of three objects immediately, and three out of three objects after a five minute delay.  Id.  He did five digits forward and four digits back.  Id.  Plaintiff's intellectual functioning appeared average, and his general fund of information was appropriate to experience.  Id.

Dr. Bromley opined that plaintiff had no evidence of limitations (1) following and understanding simple directions and instructions, (2) performing simple tasks independently, (3) maintaining attention and concentration, (4) learning new tasks, and (5) performing complex tasks independently.  T. 395.  She indicated that plaintiff was

15

"moderately limited" in (1) making appropriate decisions, (2) relating adequately with others, and (3) dealing with stress due to his psychiatric symptoms. Id. Dr. Bromley concluded that "[t]he results of the exam appear to be consistent with psychiatric problems, but in itself does not appear to be significant enough to interfere with [plaintiff's] ability to function on a daily basis." Id. at 395-96. She diagnosed plaintiff with unspecified depressive disorder and unspecified anxiety disorder. Id. at 396. Dr. Bromley recommended that plaintiff undergo individual therapy and a psychiatric intervention. Id. She noted that his prognosis was "fair." Id.

The ALJ's reliance on Dr. Bromley's opinion is consistent with the totality of the evidence in the record. See Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). As both the Commissioner and the ALJ noted, plaintiff failed to seek mental health treatment from 2010 through 2014. Dkt. No. 16 at 18; T. 28. It is well-settled that "[a]n ALJ is permitted to considered a Plaintiff's failure to seek treatment for alleged disabilities when evaluating a Plaintiff's credibility with respect to statements of the extent of the impairments." Miller v. Colvin, 85 F. Supp. 3d 742, 755 (W.D.N.Y. 2015); see Arnone v. Bowen, 882 F.2d. 34, 39 (2d Cir. 1989) (determining that the plaintiff's failure to seek medical attention "seriously undermine[d]" his contention of disability). Thus, the ALJ did not err in relying on plaintiff's lack of documented medical treatment for his mental health problems. A June 2010 document from Crisis Intervention entitled

"Crisis Intervention Triage Sheet" found that plaintiff was not suicidal, homicidal, or psychotic. See T. 291-307. Although plaintiff reported that he had suicidal thoughts, he stated that he "would never do that [because he] love[s] [his] family too much." Id. at 295. At the Crisis Intervention evaluation, he denied suicidal intent, and stated that his "vague comments [regarding suicide] were misinterpreted" and his earlier suicide attempt was not something he would do again. Id. at 298. The mental status examination was largely unremarkable, and was consistent with Dr. Bromley's findings at the 2014 consultative examination. See id. at 300-01, 393-96.

Moreover, the ALJ assessed plaintiff's subjective complaints regarding his mental limitations in conjunction with the totality of the record. T. 28. As discussed above, plaintiff's statements as to his daily activities are inconsistent with disabling mental impairments; notably, the ALJ took into account that plaintiff was able to supervise both children and adults while working in child care and at Restaurant Depot, respectively. See id. at 56-59. Thus, the Court concludes that the ALJ did not err in his determining that plaintiff could perform "low stress (non production oriented) work with occasional contact with supervisors, co-workers, and the public," as the RFC determination is supported by substantial evidence. See T. 25. As such, remand on this issue is not required.

### B. Step Five Determination

The Court finds that the ALJ's finding that plaintiff was capable of performing a significant number of jobs in the national economy is supported by substantial evidence

in the record.  As stated above, the ALJ properly determined plaintiff's RFC, and substantial evidence in the record supports that finding.  See T. 30, 76-79.  Because the ALJ posed a hypothetical based on that RFC, and the jobs that the vocational expert set forth all constitute sedentary work with the limitations set forth in the RFC, the Court finds that the step five determination is supported by substantial evidence. See id.

### V. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: January 14, 2019
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge